BORDIN MARTORELL LLP
Eduardo Martorell, State Bar No. 240027
EMartorell@BordinMartorell.com
Christopher Blanchard, State Bar No. 250729
CBlanchard@BordinMartorell.com
Angelo Mishriki, State Bar No. 305069
AMishriki@BordinMartorell.com
Howard Hughes Center
6100 Center Drive, Suite 1130
Los Angeles, California 90045
Telephone: (323) 457-2110
Facsimile: (323) 457-2120

Attorneys for Plaintiff
Enclosed Music LLC

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| ENCLOSED MUSIC LLC,<br><br>        Plaintiff,<br><br>  v.<br><br>JAMES RICHARD STEINMAN dba LOST BOYS MUSIC; EDWARD B. MARKS MUSIC COMPANY, imprint of CARLIN AMERICA, INC., a New York Corporation; MICHAEL LEE ADAY (formerly MARVIN LEE ADAY) pka MEAT LOAF; and DOES 1 through 100, inclusive,<br><br>        Defendants. | Case No. 2:17-cv-7304<br><br>**COMPLAINT FOR DAMAGES:**<br><br>  **1. Copyright Infringement;**<br>  **2. Vicarious Copyright Infringement**<br><br>**[DEMAND FOR TRIAL BY JURY]** |

PLAINTIFF, ENCLOSED MUSIC LLC ("Enclosed Music") on behalf of Jon Dunmore Sinclair and Mike Molina, by and through its counsel, respectfully brings this Complaint against Defendants JAMES RICHARD STEINMAN ("Steinman") dba LOST BOYS MUSIC ("Lost Boys"), EDWARD B. MARKS MUSIC COMPANY ("E. B. Marks"), an imprint of CARLIN AMERICA, INC. ("Carlin

America"), MICHAEL LEE ADAY (formerly MARVIN LEE ADAY) professionally known as MEAT LOAF ("Aday"), and Does 1-100 ("Does"), to obtain damages, injunctive relief, and other appropriate relief from all of the above defendants' (collectively, the "Defendants") past and ongoing infringement of Enclosed Music's valuable registered musical work and copyright per 17 U.S.C. §§ 101 et. seq. and 28 U.S.C. §§ 1331 and 1338. Specifically, Plaintiff Enclosed Music alleges as follows upon knowledge as to itself and otherwise upon information and belief:

## JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because federal questions presented herein arise under the United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101 et. seq.

2. This Court has personal jurisdiction over Defendants because the events giving rise to this claim occurred in the Central District of California and all Defendants have purposefully directed either advertising, sales, distributions, performances or digital transmissions of their recordings, including the infringing work, "I'd Do Anything for Love (But I Won't Do That)" ("Infringing Song"), to citizens of California.

3. Venue is proper under 28 U.S.C. § 1400(a) because Defendants or their agents reside or may be found in this judicial district; and also under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this claim occurred within this district.

## PARTIES

4. Plaintiff Enclosed Music is a California limited liability company with an address of P.O Box 4694, Valley Village, CA 91617. Enclosed Music owns enforceable U.S. rights in the Jon Dunmore Sinclair and Mike Molina catalog and is engaged in the business of promoting and managing those rights in the musical works in the Jon Dunmore Sinclair and Mike Molina catalog. Mr. Dunmore is a

performer and accomplished composer. Enclosed Music, as Mr. Dunmore's and Mr. Molina's publisher, is a legal and/or beneficial owner in and to the musical composition titled "[I'd do] Anything for You" (the "Original Song").

5. Defendant Steinman is an individual residing in the City of New York, State of New York. Defendant Steinman is a composer, lyricist, and record producer providing entertainment services throughout the United States and in the Central District of California.

6. Defendant Lost Boys appears to be a "dba" alias for Defendant Steinman. The exact nature of relationship between Lost Boys Music and Defendant Steinman will be ascertained during discovery. Based on information and belief, Lost Boys was administered by Howard Siegel, Esq., formerly of Pryor Cashman Sherman and Flynn. As Lost Boys appears to be an unincorporated business entity, Defendant Steinman and any other general partners are jointly and severally liable for the partnership's and each other's contracts, debts, obligations and legal violations.

7. Defendant E. B. Marks, appears to be an imprint of Defendant Carlin America. An imprint of a publisher is a trade name under which the publisher or conglomerate publishes a work. The exact nature of relationship between E. B. Marks and Carlin America will be ascertained during discovery. As Defendant E. B. Marks appears to be an unincorporated business entity, Defendant Carlin America and any other general partners are jointly and severally liable for the partnership's and each other's contracts, debts, obligations and legal violations.

8. Defendant Carlin America is a New York Corporation with a principal business office located at 1619 Broadway, New York, New York, 10019. Defendant Carlin America is engaged in the business of producing, promoting, licensing, and selling sound compositions throughout the United States and in the Central District of California.

///

9. Defendant Aday, previously known as "Marvin Lee Aday," and professionally known as "Meat Loaf," is an individual residing in the City of Austin, Texas. Defendant Aday is a recording artist providing entertainment services throughout the United States and in the Central District of California.

10. The true names, identities, or capacities, whether individual, associate, corporate, or otherwise, of defendants DOES 1 through 100, inclusive, and each DOE in between, are unknown to Plaintiff Enclosed Music at this time, and Enclosed Music therefore sues said defendants by such fictitious names. When the true names, identities, capacities, or participation of such fictitiously designated defendants are ascertained, Plaintiff Enclosed Music will ask leave of Court to amend its Complaint to insert said names, identities, capacities, together with the proper charging allegations. Plaintiff Enclosed Music is informed and believes and thereon alleges that each of the defendants sued herein as a DOE is responsible in some manner for the events and happenings herein referred to, thereby legally causing the damages to Enclosed Music as hereinafter set forth.

11. Each of the Defendants was the alter-ego, parent or subsidiary, predecessor or successor, principal or agent, member or manager, partner, joint-venturer, employer or employee, master or servant, and/or co-conspirator of each other Defendant with regards to performing the acts herein alleged.

12. Each of the Defendants authorized or ratified the acts or omissions of the other Defendants as herein alleged, and did so for its own financial and individual advantage or the collective advantage of all Defendants.

13. Each of the Defendants is jointly and severally liable for the infringements and damages alleged herein.

## INTRODUCTION AND BACKGROUND

14. In December 1989, Mr. Dunmore and his writing partner, Mike Molina, independently created an original composition with lyrics, to which they gave the name "[I'd do] Anything for You" (the "Original Song"). Plaintiff Enclosed Music

owns the rights and title to the copyright in the Original Song's composition. Mr. Dunmore and Molina formally assigned such rights to Enclosed Music, their publishing entity.

15. Mr. Dunmore obtained a copyright from the United States Copyright Office on January 8, 1990 for the Original Song's musical composition (original Reg. No. PA0001315370). The Certificate of Copyright Registration for the Original Song is attached hereto as Exhibit A.

16. Three years later, Defendant Steinman claimed credit as the composer and producer of "I'd Do Anything for Love [But I Won't Do That]" (the "Infringing Song"). The composition comprising the Infringing Song has been marketed and exploited commercially by all Defendants.

17. The Original Song and the Infringing Song share various traits that render both substantially similar. Both songs share a similar chord progression. However, the portions of each work that drive the recognizability (the distinct nature) of both songs are the chorus and melody as they relate to the lyrics, "I would do anything for..." The Infringing Song essentially copied the "soul" of the original work, which renders both pieces substantially similar.

18. Defendants did not seek authorization to use the Original Song from Plaintiff, or any owner of the rights to the Original Song.

19. UNIVERSAL MUSIC GROUP HOLDINGS, INC. ("Universal"), the record label formerly dba MCA, first released the Infringing Song, on or about September 1993, as a single on Defendant Aday's album "Bat Out of Hell II: Back into Hell" ("Infringing Album").

20. The Infringing Song and Infringing Album garnered much commercial success.

21. The Infringing Album was a commercial hit and has sold more than 14 million copies around the world. Nielsen SoundScan attributed 4.7 million album sales in the United States since the Infringing Album debuted in late 1993. The

Infringing Album debuted at No. 3 on The Billboard 200 and rose to No. 1 four weeks later. The Infringing Album was No. 1 for one week in the US on the Billboard 200 and No. 1 in Australia for four weeks. The Infringing Album was also almost the biggest hit of 1993 in the U.K., selling 761,200 copies and staying at number one for seven weeks.

22. In Austria, the Infringing Album received Platinum certification after selling 50,000 copies. In Canada, the Infringing Album achieved 9× Platinum certification, selling 900,000 copies. In Germany, the Infringing Album achieved 2× Platinum certification, selling 1,000,000 copies. In Sweden, the Infringing Album achieved Platinum certification after selling 100,000 copies. In Switzerland, the Infringing Album achieved Platinum status after selling 50,000 copies. In the United Kingdom, the Infringing Album received 6× Platinum certification for selling 1,800,000 copies. In the United States, the Infringing Album obtained 5× Platinum certification for selling 5,000,000 copies. Note, the requirements for achieving "Platinum" status are not uniform internationally.

23. The Infringing Song, as a single, spent five weeks at No. 1 on The Billboard Hot 100. In 28 countries, the Infringing Song reached number one in the charts. The Infringing Song also garnered Mr. Aday the 1993 Grammy award for best male rock vocal performance. The Infringing Album also secured for Mr. Aday two Brit Awards nominations (Best International Male and Best Selling Single).

24. The success of the Infringing Album was driven by the Infringing Song.

25. All of the Defendants used the Original Song to directly benefit from the sales and licensing of a commercial product, i.e., the Infringing Song, both as a single and within the Infringing Album.

26. In addition, the Infringing Song continues to commercially benefit in the form of licensing. Defendants have commercially licensed use of the Infringing Song to various third parties including, but not limited to, the production companies and distributors of the 2016 film "Sausage Party," the production companies and

distributors of the 2012 film "The Vow," the production companies and distributors of the television program "The Voice" for use related to the 2016 semifinals and the 2015 season, the production companies and distributors of the television program "Britain's Got Talent" for use related to the 2014 season, the production companies and distributors of the 2013 television comedy "Super Fun Night," the production companies and distributors of the 2000 film "Meat Loaf: to Hell and Back," various 3rd party entities who have licensed the Infringing Song for advertising purposes, and various entities promoting and hosting concert performances of the Infringing Song.

27. Upon information and belief, all Defendants are responsible in some manner for the events described herein and are liable to Plaintiff for the damages their infringement has caused. The Defendants are the writers, composers, performers, producers, record labels, distributors, and publishers, who were involved with the creation, release, reproduction, distribution, exploitation, licensing, and public performance of the Infringing Song, embodied in all forms of media, including videos, digital downloads, records, motion pictures and advertisements, all of which constitute, among other things, the improper preparation of a derivative work and direct, vicarious, and contributory infringement. As co-infringers, the Defendants are jointly and severally liable for all amounts owed.

## FIRST CAUSE OF ACTION

**(Copyright Infringement of Musical Work – Against Defendants JAMES RICHARD STEINMAN dba LOST BOYS MUSIC, EDWARD B. MARKS MUSIC COMPANY, imprint of CARLIN AMERICA, INC., and DOES 1 through 100 inclusive)**

28. Plaintiff incorporates by reference all of the foregoing Paragraphs as if fully set forth herein.

29. Plaintiff is an actual and beneficial owner of the Original Song, which is the subject of a valid Certificate of Copyright Registration issued by the Register of Copyrights, as seen in Exhibit A to this Complaint. As copyright owner, Plaintiff has

the right to exclude any other person from reproducing, distributing, performing, displaying or preparing derivative works from the Original Song covered by copyright for a specific period of time.

30. Defendant Steinman, dba Lost Boys copied the original expression from the Original Song to create the Infringing Song. Defendant Steinman, as Lost Boys, created a derivative musical composition resulting in the Infringing Song.

31. As Defendant Steinman's publisher, E. B. Marks and its parent company Carlin America participate in the process of licensing the composition of the Infringing Song for use by third parties. It is custom and practice for a composer to grant a written assignment in a work's copyrights in exchange for representation by a publisher. As the Infringing Song's publisher, E. B. Marks, as a subset of Carlin America, is presumably part owner of the Infringing Song's composition and profited from the commercial use of the Infringing Song.

32. There are substantial similarities between the Infringing Song and Plaintiff's Original Song. Both the Infringing Song and the Original Song contain substantially similar defining compositional elements. The Defendants' use of elements from the Original Song was substantial. Both songs share a similar chord progression, and motif, and both songs include the recognizable chorus and melody as they relate to the lyrics, "I would do anything for..." The infringed parts, elements, and motifs of the Original Song were a critical component of the Infringing Song's success; the portion copied by Defendants effectively makes up the "soul" of the copyrighted Original Song. The average audience would easily recognize the appropriation.

33. Defendant Steinman also had access to Plaintiff's Original Song. During the time in which Mr. Dunmore wrote and filed for copyright registration for the Original Song, Mr. Dunmore was represented by attorney Howard Siegel at the law firm of Pryor Cashman (formerly Pryor, Cashman, Sherman & Flynn). During that same time period, Mr. Siegel represented Defendant Steinman (and Defendant

Aday) and administered Lost Boys. The concurrent representation of two songwriter clients lends an inference that, during a visit with Mr. Siegel, Mr. Steinman would have had a reasonable opportunity to view, hear, and/or copy the Original Song before composing the Infringing Song.

34. Moreover, during the course of Mr. Siegel's representation of Mr. Dunmore, Mr. Siegel asserted to Mr. Dunmore that Mr. Aday was looking for music. During the same time period, Mr. Siegel also represented that he would "shop" and distribute Mr. Dunmore's music to his musician contacts for consideration.

35. After Mr. Steinman and Lost Boys directly copied the Original Song, Defendants reproduced, manufactured, distributed, publicly performed, and/or licensed the Infringing Song (or contributed to the foregoing), which incorporates unauthorized portions of the Original Song.

36. At no point did any owner or co-owner of the Original Song ever specifically authorize or permit Defendants, orally or in writing, to copy, distribute, or reproduce any part, component, element, or motif from the Original Song for use in the Infringing Song or any variation or version thereof.

37. The foregoing acts of copyright infringement have been willful and intentional.

38. As a result of such copyright infringements, Plaintiff has suffered both statutory and actual damages in an amount that will be proven at trial.

## SECOND CAUSE OF ACTION

**(Vicarious Infringement of Musical Work – Against EDWARD B. MARKS MUSIC COMPANY, imprint of CARLIN AMERICA, INC., MICHAEL LEE ADAY (formerly MARVIN LEE ADAY) dba MEAT LOAF, and DOES 1 through 100 inclusive)**

39. Plaintiff incorporates by reference all of the foregoing Paragraphs as if fully set forth herein.

///

40. Plaintiff is an actual and beneficial owner of the Original Song, which is the subject of a valid Certificate of Copyright Registration issued by the Register of Copyrights, as seen in Exhibit A to this Complaint.

41. Defendants' activities constitute vicarious infringement of Plaintiff's rights in and to the federally registered copyright in the composition of the Original Song, because Defendants each directly benefitted financially from the infringing activity of Defendant Steinman, Defendants had the right and ability to supervise and/or control Defendant Steinman and Lost Boys' infringing activity, and yet Defendants failed to exercise that right and ability.

42. The work between Mr. Steinman and Mr. Aday on the Infringing Album, has been described by both as a collaboration. Use of the composition of the Infringing Song was critical in Mr. Aday's success performing the Infringing Song. As the known performer of the Infringing Song and Album, Mr. Aday benefitted financially from Defendant Steinman and Lost Boys' infringement. As a collaborator, Defendant Aday had the right to supervise and control Defendant Steinman's composing work, but failed to exercise his right and ability.

43. As Defendant Steinman's publisher, E. B. Marks and its parent company Carlin America participate in the process of licensing the composition for use by third parties. It is custom and practice for a composer to grant a written assignment in a work's copyrights in exchange for representation by a publisher. As the Infringing Song's publisher, E. B. Marks, as a subset of Carlin America, both shared ownership and profited from the commercial use of the Infringing Song.

44. In light of their roles related to the commercial use of the Infringing Song, Defendants' continuous promotion and advertisement of the Infringing Song served to condone, encourage, and facilitate Defendants Steinman and Lost Boys' ongoing infringing conduct.

///
///

45. In licensing the Infringing Song, Defendants promoted, marketed, and advertised the Infringing Song, taking active steps to encourage, recommend, and facilitate third party infringing conduct regarding the Infringing Song.

46. Mr. Steinman's publishing agreement with E.B. Marks and Carlin America for the Infringing Song's composition was exclusive, as was Mr. Steinman's agreement with BROADCAST MUSIC, INC. ("BMI") as his performing rights organization for the Infringing Song. The Defendants thus had the ultimate right and ability to control and supervise Mr. Steinman's licensing of the Infringing Song.

47. E.B. Marks and Carlin America each failed to exercise its right and ability to control and supervise use and licensing of the Infringing Song by Mr. Steinman, despite clear evidence of knowledge of the uses of the Infringing Song.

48. E.B. Marks and Carlin America's failure to act resulted in direct financial benefit via the sales and licensing profits from the Infringing Song.

49. Even if Mr. Steinman's agreements with E.B. Marks, and Carlin America had not been exclusive, E.B. Marks and Carlin America's status as copyright owners of the composition embodied in the Infringing Song gave E.B. Marks and Carlin America the right and ability to block the release and licensing of the Infringing Song.

50. Defendants' conduct with regard to the Infringing Song, as described above, was entirely unlicensed and unauthorized, and was done without the consent or permission of Plaintiff or any co-owner of the rights in the Original Song's composition.

51. Defendants' unauthorized reproductions, distributions, public performances, and/or third-party licensing of the Infringing Song, as alleged above, each constitute separate infringements of Plaintiff's rights in and to the federally registered composition copyright for the Original Song.

///

52. The foregoing acts of copyright infringement have been willful and intentional.

53. Given such infringement, Plaintiff has suffered actual damages in an amount that will be proven at trial.

## DEMAND FOR RELIEF

54. The foregoing conduct by Defendants is an infringement of Plaintiff's exclusive rights under 17 U.S.C. §§ 106 and 501 of the Copyright Act of 1976. As a direct and proximate result of Defendants' aforesaid acts, Plaintiff has suffered and continues to suffer actual and substantial damages in an amount to be proven at trial.

55. WHEREFORE, Plaintiff, by counsel, respectfully requests that the Court enter an Order requiring that:

(A) Pursuant to 17 U.S.C. § 502(a), Defendants, their agents, servants and employees, and all parties in privity with them, be enjoined permanently from directly or indirectly using the composition of the Infringing Song, or any other derivative work, in any manner which infringes upon Plaintiff's copyrights;

(B) Defendants file with the Court and serve on Plaintiff a report setting forth the manner and form in which compliance with said permanent injunction against infringement has been made;

(C) Pursuant to 17 U.S.C. § 504(b), Defendants be required to pay to the Plaintiff such actual damages as the Plaintiff may have sustained in consequence of Defendants' infringement and all profits of Defendants that are attributable to the infringement of Plaintiff's rights in said copyrights to the composition of the Original Song;

(D) Defendants provide Plaintiff an accounting for all gains, profits and advantages attributable to or derived by Defendants from their infringement;

(E)  Pursuant to 17 U.S.C. § 504(c), Defendants be required to pay an award of statutory damages in a sum of not less than $30,000 per infringement, should this statutory remedy be elected, for Defendants' violations of Plaintiff's rights in said copyrights to the Original Song's composition;

(F)  Pursuant to 17 U.S.C. § 504(c), should Defendants' infringements be found to have been willful, Defendants be required to pay an award of increased statutory damages in a sum of not less than $150,000 per infringement for willful infringement, should this statutory remedy be elected, for Defendants' violations of Plaintiff's rights in said copyrights to the Original Song's composition;

(G)  Pursuant to 17 U.S.C. § 505, Defendants be required to pay Plaintiff's full costs in this action and reasonable attorney's fees;

(H)  Defendants be equitably disgorged of wrongfully obtained profits attributable to the Infringing Song;

(I)  Defendants, to the extent they are found to have conspired to commit copyright infringement or any of the other violations alleged herein above, be liable for damages under California law to the extent not preempted by federal law.

(J)  Plaintiff be awarded such other and further relief as is just and equitable.

Dated: October 4, 2017            BORDIN MARTORELL LLP

By:    /s/ Eduardo Martorell
      Eduardo Martorell
      Christopher Blanchard
      Angelo Mishriki
      *Attorneys for Plaintiff*
      **ENCLOSED MUSIC LLC**

# **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury as to all causes of action.

Dated: October 4, 2017          BORDIN MARTORELL LLP


By: ___/s/ Eduardo Martorell___
Eduardo Martorell
Christopher Blanchard
Angelo Mishriki
*Attorneys for Plaintiff*
**ENCLOSED MUSIC LLC**

**EXHIBIT A**

# CERTIFICATE OF COPYRIGHT REGISTRATION

**FORM PA**
UNITED STATES COPYRIGHT OFFICE

This certificate, issued under the seal of the Copyright Office in accordance with the provisions of section 410(a) of title 17, United States Code, attests that copyright registration has been made for the work identified below. The information in this certificate has been made a part of the Copyright Office records.

REGISTRATION NUMBER

PAU 1 315 370

☐ PA  ☒ PAU

EFFECTIVE DATE OF REGISTRATION

JAN 08 1990

REGISTER OF COPYRIGHTS
United States of America

OFFICIAL SEAL

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

---

**1** TITLE OF THIS WORK ▼
1. I'D DO ANYTHING FOR YOU
2. OBSESSION

PREVIOUS OR ALTERNATIVE TITLES ▼
IN SONGS BY: DUNMOLINA

NATURE OF THIS WORK ▼ See instructions
WORDS AND MUSIC

---

**2** NAME OF AUTHOR ▼
a  JON DUNMORE

DATES OF BIRTH AND DEATH
Year Born ▼ 4-15-58  Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes  ☒ No

AUTHOR'S NATIONALITY OR DOMICILE
Citizen of ▶ BRITAIN
Domiciled in ▶ U.S.A.

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous? ☐ Yes ☒ No
Pseudonymous? ☐ Yes ☒ No

NATURE OF AUTHORSHIP Briefly describe nature of the material created by this author in which copyright is claimed. ▼
CO AUTHOR OF WORDS AND MUSIC

NAME OF AUTHOR ▼
b  MIKE MOLINA

DATES OF BIRTH AND DEATH
Year Born ▼ 4-14-54  Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes  ☒ No

AUTHOR'S NATIONALITY OR DOMICILE
Citizen of ▶ U.S.A.
Domiciled in ▶ U.S.A.

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous? ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No

NATURE OF AUTHORSHIP Briefly describe nature of the material created by this author in which copyright is claimed. ▼
CO AUTHOR OF WORDS AND MUSIC

NAME OF AUTHOR ▼
c

DATES OF BIRTH AND DEATH
Year Born ▼  Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes  ☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Citizen of ▶
Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous? ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No

NATURE OF AUTHORSHIP Briefly describe nature of the material created by this author in which copyright is claimed. ▼

---

**3** YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED
DEC 1989 ◀ Year

DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK
Month ▶  Day ▶  Year ▶  ◀ Nation

---

**4** COPYRIGHT CLAIMANT(S) Name and address must be given even if the claimant is the same as the author given in space 2. ▼
JON DUNMORE / MIKE MOLINA
617 SOUTH 7TH ST, #3,
PHILADELPHIA,
PA 19147

APPLICATION RECEIVED
JAN 08 1990

ONE DEPOSIT RECEIVED
JAN 08 1990

TWO DEPOSITS RECEIVED

REMITTANCE NUMBER AND DATE

TRANSFER If the claimant(s) named here in space 4 are different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

---

MORE ON BACK ▶ • Complete all applicable spaces (numbers 5-9) on the reverse side of this page.
• See detailed instructions.  • Sign the form at line 8.

DO NOT WRITE HERE
Page 1 of 2 pages

FORM PA

**FOR COPYRIGHT OFFICE USE ONLY**

EXAMINED BY

CHECKED BY

☐ CORRESPONDENCE Yes

☐ DEPOSIT ACCOUNT FUNDS USED

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?
☐ Yes ☒ No   If your answer is "Yes," why is another registration being sought? (Check appropriate box) ▼
☐ This is the first published edition of a work previously registered in unpublished form.
☐ This is the first application submitted by this author as copyright claimant.
☐ This is a changed version of the work, as shown by space 6 on this application.
If your answer is "Yes," give: **Previous Registration Number** ▼    **Year of Registration** ▼

**5**

**DERIVATIVE WORK OR COMPILATION**  Complete both space 6a & 6b for a derivative work; complete only 6b for a compilation.
a. **Preexisting Material**  Identify any preexisting work or works that this work is based on or incorporates. ▼

N/A

See instructions before completing this space.

b. **Material Added to This Work**  Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

N/A

**6**

**DEPOSIT ACCOUNT**  If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.
Name ▼     Account Number ▼

**7**

**CORRESPONDENCE**  Give name and address to which correspondence about this application should be sent.  Name/Address/Apt/City/State/Zip ▼

JON DUNMORE
617 SOUTH 7TH STREET, #3
PHILADELPHIA,
PA - 19147

Area Code & Telephone Number ▶ 215-925-4447

Be sure to give your daytime phone number ◀

**CERTIFICATION*** I, the undersigned, hereby certify that I am the
Check only one ▼
☒ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☐ authorized agent of _____
Name of author or other copyright claimant, or owner of exclusive right(s) ▲

JON DUNMORE / MIKE MOLINA

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Typed or printed name and date ▼ If this is a published work, this date must be the same as or later than the date of publication given in space 3.

JON DUNMORE - MIKE MOLINA    date ▶ DEC 28 1989

Handwritten signature (X) ▼

**8**

**MAIL CERTIFICATE TO**

Certificate will be mailed in window envelope

Name ▼ JON DUNMORE
Number/Street/Apartment Number ▼ 617 SOUTH 7TH STREET, APT 3
City/State/ZIP ▼ PHILADELPHIA, PA - 19147

**YOU MUST:**
• Complete all necessary spaces
• Sign your application in space 8
**SEND ALL 3 ELEMENTS IN THE SAME PACKAGE:**
1. Application form
2. Non-refundable $10 filing fee in check or money order payable to Register of Copyrights
3. Deposit material

**MAIL TO:**
Register of Copyrights
Library of Congress
Washington, D.C. 20559

**9**

* 17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

☆U.S. GOVERNMENT PRINTING OFFICE: 1989—241-428/80,014

■March 1989—200,000

## Song Writing Agreement

We confirm the song titled ANYTHING FOR YOU
has been written in the following proportions:-

Music    JON DUNMORE    60 %
         FRANCISCO MICHAEL MOLINA    40 %

Lyric    JON DUNMORE    60 %
         FRANCISCO MICHAEL MOLINA    40 %

Date Written 19.89

Signed [signature] of 4908 DENNY AVE, NTH HOLLYWOOD, CA 91601
       [signature Francisco Michael M.] of 562 W. TAFT AVE., BRIDGEPORT, CT. 06604

Witnessed [signature Allyson Molina] of 562 W Taft Ave, Bridgeport CT 06604

## Song Writing Agreement

We confirm the song titled .................
has been written in the following proportions:-

Music .................  %

Lyric .................  %

Date Written .................

Signed ................. of .................
Witnessed ................. of .................

[signatures]